Hamer v. Neighborhood Housing Services comes next for argument. Mr. Herstock. Good morning, Your Honors. May it please the Court. This case comes to the Court on remand from the Supreme Court to determine the remaining procedural issues in this case, as well as the merits. On the procedural issues, the defendants committed several acts of forfeiture and waiver that require the appeal to be considered on the merits. And additionally, equitable considerations require consideration of the appeal on the merits. And then, on the merits of the appeal, there is more than enough evidence in the record that demonstrates that Ms. Hamer was retaliated against a mere three days after she filed an internal discrimination complaint. I'd like to start out with the procedural issues, and specifically the defendant's failure to file a cross appeal. The Supreme Court precedent is clear that a cross appeal is required if an appellee is seeking to lessen the appellant's rights. That's exactly what we have here. The defendants are seeking a determination that the district court's time extension was in error and seeks to nullify that time extension. Counsel, can I ask you a question? Do you envision this as an appeal from an independently appealable order, that order being the grant of the extension? Or do you conceive of this as a cross appeal from the judgment after you appeal the judgment? I think the case law is unclear about that extension. I think it could be viewed as either way, and either way, a separate appeal notice is required. Which way would you view it? Which way do you think is the best way? I would view it as a separate order that's independently appealable. It could be considered a cross appeal. It also could be considered its own appeal notice. I'm now lost. There's no cross appeal here. You get a cross appeal if there's a second appeal by the appellee in the first appeal. There's an argument about whether a cross appeal was necessary, but there is, in fact, just one appeal, so there can't be a cross appeal. The cross appeal would be under Rule 4A.3. There is no cross appeal because there's only one appeal. That's just definitional. I guess what I'm saying is that if the defendants wanted to challenge the time extension order, a separate appeal notice would be required. That's your argument. Yes. They should have filed a cross appeal, but, of course, there was none filed. Correct. That's right. Now, has this court ever required a cross appeal to contest an order extending the time? I have not seen any case law from this court going either way on that question. Yeah. However— Now, I know two circuits, Third and Sixth, have said that. But the Supreme Court has said that a cross appeal is never necessary if all you want to do is defend your judgment. Are the appellees here doing more than defending their judgment? They are. They're not only seeking to defend the judgment. They're seeking insulation. They are not asking for an alteration in the judgment, are they? No. Not on the merits of the summary judgment order. But that's the Supreme Court's holding in Massachusetts Mutual against Ludwig, and there have been lots of other cases. But unless you ask for an alteration in the judgment, you don't need to file a cross appeal. Well, the appellees aren't asking for an alteration in the judgment, are they? In the judgment on the merits, no, but they are seeking an alteration of the district's courts' time extension order, and that— You can defend your judgment on any ground in the record, even if that means disagreeing with one or another thing the district judge did. That's the foundation for this line of cases. Your brief doesn't discuss any of the Supreme Court's cases on when you need to take a cross appeal. Well, it's the Supreme Court in Jennings v. Stevens talks about lessening the appellant's rights and a cross appeal being required there. However, if the court doesn't look at this as a cross appeal and just looks at the time— No, there is no cross appeal in this case. You say there should have been, but there is none. We just have to start there. That's right. There should have been. There should have been a separate appeal notice filed from the time extension order had the defendants wanted to challenge that. So you are now saying that the appeal should have come from the order? Because I think it matters to Judge Easterbrook's question here because it's not altering the judgment. So the only way your argument works is if the order granting the extension was an independently appealable order that they had to file an appeal from. Correct, and it is. It is a separately appealable order. So you're withdrawing from the judgment thing? I'm not withdrawing, but I think the court can see it either way, like the Sixth Circuit did in the United States. Well, the Sixth Circuit wasn't clear about whether the Sixth Circuit was treating this as a cross appeal from the judgment, seeking alteration of the judgment, or whether it was characterizing it as an appeal from the order. That is true. The Sixth Circuit did not specify that. However, at the very least, if this order is considered to be separately appealable such that it's not a cross appeal but rather a separate appeal, the fact that an appeal notice was not filed from that separately appealable order constitutes a forfeiture. Let's go to the Appellee's Docketing Statements. The Appellee's Docketing Statements say that the appeal is within our jurisdiction and timely, and you contend that that's a waiver. My question for you on that issue is, have we ever said that representation in a docketing statement can waive anything? I've not seen a case from this court going either way on that point. How about other circuits on the effects of docketing statements? I think as a general proposition, failure to raise an issue in a docketing statement as a general matter does not waive the right to do that. Look, I'm not asking about failure to raise an issue. That would be forfeiture. I'm asking about waiver. I don't think that this circuit has said anything about whether docketing statements can waive anything. I'm asking whether other circuits, whether you've found other circuits that talk about potential waivers in a docketing statement or the equivalent document in other circuits. I have not found any cases that squarely address this issue. I have not found a case where an affirmative statement, like the statements made by the appellees here, were made in a docketing statement, and then later on the appellees tried to argue the opposite. Usually in a docketing statement, simply the issues on appeal are listed, and that's it. So there usually isn't much opportunity for an affirmative waiver. But here, when there's a statement like they have here, two statements that say that the appeal was timely, I submit that that constitutes a waiver, and therefore the appeal should be considered on the merits. And if the court has no further questions on the procedural issues, I'll rest on the briefs for that and then turn to the merits. And on the merits, there's more than enough evidence that would permit a reasonable jury to conclude that Ms. Hamer was subjected to illegal retaliation. In December of 2011, Ms. Hamer received a performance review, which, although it did point out room for improvement, was overall positive. In January 2012, consistent with that, Ms. Hamer was recommended for a 7% merit pay increase. Then everything changed in February of 2012. In February of 2012, after Ms. Hamer was passed over for promotion, she filed an internal discrimination complaint on February 27th. A mere three days after that, the defendants decided to take adverse employment action against her by removing her from the Mortgage Help Center and subsequently removing her from Neighborhood Housing Services. But there's no evidence that any of the decision makers knew about that complaint. I respectfully disagree with that because the record shows that on February 28th, Ms. Anderson, to whom Ms. Hamer complained, spoke to Ms. Glenn, who is Ms. Hamer's direct boss, and inquired about the reasons for her non-selection for this promotion. We also know that Ms. Glenn, who's one of the decision makers, knew that Ms. Hamer was going to be talking to Ms. Anderson on February 27th because we have an email from Ms. Hamer to Ms. Glenn saying that she was going to be meeting with Ms. Anderson and would not be returning that day. So it is more than reasonable to infer from that that Ms. Glenn figured out that Ms. Hamer had filed a complaint. And therefore, there is evidence of record that shows that the decision makers were aware of this internal discrimination complaint. We also know that the proffered reasons for this adverse employment action are there that simply cannot be true, or at least a reasonable jury could so find. The only specific incident that the defendants point to to support her removal from the Mortgage Help Center is this February 7th email that Ms. Hamer sent. We know that could not possibly have played any role in her removal because after February 7th, the defendants, specifically Neighborhood Housing Services, came out with a career progression plan for Ms. Hamer where they envisioned potential future advancements and pointed out ways that she could maximize the chance of that happening. And they didn't say a word about the February 7th email. Consistent with that, the defendants later made plans for Ms. Hamer to travel to Dallas later in March of 2012. The defendants would not have done that had they truly believed that she was so disruptive to the workplace. The only thing that makes sense here is that Ms. Hamer filed this internal discrimination complaint on February 27th, which the decision makers found out about. And then they decided to remove her from the Mortgage Help Center and subsequently removed her from Neighborhood Housing Services after offering her a demotion. For these reasons, we respectfully submit that the District Court's judgment should be reversed and the case should be remanded to the District Court for trial on Ms. Hamer's retaliation claims. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal, please. Certainly, Mr. Herstoff. Mr. Fazio. May it please the Court. Ms. Hamer's appeal was untimely. In Trapanier v. City of Blue Island, this Court held that an appellee had not waived an objection to a pro se appellant's untimely notice of appeal because the defendant asserted the untimeliness defense before ever addressing the merits. That's the rule in this circuit, that an objection to an untimely notice of appeal... Well, what happened in that case in the docketing statement? That case did not involve any statements in the docketing statement. In the docketing statement. That's true. So we've got this question whether an affirmative representation in the docketing statement, that the appeal is within our jurisdiction and is timely, counts as a waiver. And we know, of course, from the Supreme Court's decision that this is a problem that can be waived. Yes. So why shouldn't that be treated as a waiver? Well, as an initial matter, we've been consistent in our position that the time limit in 4A.5c is a claim processing rule, not subject to equitable acceptance. Well, I understand that. But the docketing statement doesn't say, as it might have, it's within the court of appeals jurisdiction because Rule 4A.5c is a claim processing rule. But it is not, in fact, timely because the extension violates the rule. Then you wouldn't have any problem. But the docketing statement says it's timely. So I would like to see if I can get you to address the general question whether representations in a docketing statement should be taken as waivers. Sure. As a general matter, I think the answer is no. And the reason is because it would be unprecedented, not only within this circuit, but nationwide. There is a first time for everything. Is there a reason why an affirmative statement by a party should not be taken as a waiver by that party? Yes, because these docketing statements are in wide use among the circuit courts. And the only authority out there regarding their effect is that they are nonbinding, that they do not irrevocably define the limits of the scope of an appeal, etc. So the only statements, extant statements, regarding the effect of these docketing statements at the various circuit courts throughout the country reiterates their nonbinding effect. In fact, the First Circuit rules, this is just by one example, states that errors or omissions in the statement shall not affect the appeal. That's more than just omissions. That's errors as well. That includes affirmative misstatements. And in this case in particular, the docketing statement doesn't constitute waiver because it didn't constitute an intentional relinquishment of a known right, which is the hallmark of waiver. Now, the hallmark of waiver is doing something deliberately. We never try to look inside somebody's head. For all I know, some lawyer wrote this out and had a brain that was thinking of the next Marvel action movie. But a lawyer's affirmative statements don't get nullified because he was thinking about fantasy figures rather than law. That can't be the case. We readily conceded in our January 8, 2016, memorandum regarding the timeliness of the appeal, which was filed within weeks of the docketing statement. We conceded and represented, truthfully, of course, in that brief that we had not been aware of the timeliness issue at the time we filed our docketing statement. I don't see if you make an affirmative representation, you can say, I made this representation with a totally empty head. I was as ignorant of the rule because I didn't read it. I represented that the extension was proper, and that's because I never bothered to read the rule, just like the lawyer who asked for it. Everybody in this case has an empty head, so no one's representation is binding. You can't run a legal system on that basis. You just can't. I understand. Importantly, I think neither this court nor Ms. Hamer acted or forewent action in reliance upon the statements of the docketing statement. So it had no meaning or effect. Typically, waiver concerns are motivated by either that the district court didn't have an opportunity to flesh out an issue before it came up to the court of appeals, or that a party changed its position or the court changed its position or acted in reliance on the statement. None of those concerns are present. What we have is a statement, admittedly one based on ignorance of the rule, that was made, that changed no one's position, and that we concede was made in ignorance of the rule, just as Ms. Hamer and her attorneys and the district court were in ignorance of the same rule. Placing that burden on us at that stage in a non-binding docketing statement, there's a certain amount of inequity that it becomes our burden at that time. Why? This is signed by you and by Mr. Nowak, this docketing statement. Why is it inequitable for a court of appeals to say, before making a representation to the court of appeals, the lawyer has to do legal research? That is, you had to read the text of the rule. Your contention, we can just represent anything we want, it doesn't matter, I don't have to do legal research before making legal representations to the court of appeals. I don't see how you can run a legal system that way. Within less than two weeks of that representation, when no party or this court had acted in reliance on that statement, we took the position very clearly that the appeal was untimely. Counsel, waiver doesn't depend on how other people react to it. Can I ask you a question about the order? Is it independently appealable, this order granting the extension of time, and why or why not? There's certainly no requirement to appeal or cross-appeal. We're not asking for reversal of the district court's erroneous order. We're simply asking for enforcement of a time limit found in Rule 485C, a mandatory claim processing rule. The rule on claim processing rules is that they are unalterable unless forfeited away. The rule is not that they are unalterable unless altered by the district court. The district court had no authority or ability or discretion to alter that rule. Ms. Hamer thus remained bound by that time limit, regardless of whether the district court granted her longer than she was permitted. Importantly, Ms. Hamer cited no authority requiring an appeal or a cross-appeal to an order violating a claim processing rule. In her reply brief, Ms. Hamer urges this court to follow the Sixth Circuit's reasoning in United States v. Birch, but that case did not involve violation of a claim processing rule. In Birch, the trial court entered an order extending the time to appeal that it was permitted to enter under the applicable rules. Similarly, in Amantangelo, the other case relied upon by Hamer. That did not involve violation of a claim processing rule, and declining to dismiss that appeal, the Third Circuit noted that the appellants had in fact appealed within a time that could have been allowed under Rule 485C. Not the case here. Here, there's no dispute that Judge Castillo granted an extension that the rules afforded him no discretion to grant, and there's no dispute that the time limit found in Rule 485C is a mandatory claims processing rule. The Supreme Court held as much in this case. I must say, this doesn't make either the bench or bar look very good. Lawyers ask for things that the rule specifically forbids. The other side pays no attention, including you, pays no attention to the contents of the rule for quite some time. The district judge doesn't pay any attention to the contents of the rule. Oh, dear. That's fair. But here. Okay. Thank you very much. You're on Mr. Nowak's time now. Okay. Thank you. Mr. Nowak. Good morning. May it please the Court. The district court properly granted summary judgment in favor of NHS and Fannie Mae as to Ms. Hamer's employment discrimination claims, and we respectfully ask this Court to affirm that judgment. As to the retaliation claim, the parties agree that Ms. Hamer engaged in protected activity when she complained to Human Resource Director Linda Anderson about her failure to promote into a counselor position. But to survive summary judgment, however, Ms. Hamer must show that there was a causal link between that complaint and her removal from the help center. In other words, under Nassar, cited in our brief, that the complaint was the but-for cause for her removal. Simply put, she cannot establish that causal connection. First, on the basis of knowledge. As an initial matter, the district court properly found that the two decision makers here, Robin Coffey and Toya Glenn, had no knowledge of Ms. Hamer's complaint before they removed her from the help center. Indeed, Ms. Coffey and Ms. Glenn testified that they were never informed by Ms. Anderson, and Ms. Anderson, who received the complaint, never told them about the complaint. Let's assume that's right. Did Anderson make a note in the personnel file? Ms. Anderson took, according to Ms. Hamer, she took handwritten notes of their conversation. That's not the question I'm asking. I'm asking whether Anderson made a note of this in the personnel file, which the people who then removed the plaintiff might have consulted. What they said in the deposition was very careful. It was, Anderson never told us. That's completely consistent with their having learned of it from a note in the personnel file. Now, it may be that since Hamer's lawyer in the district court did not ask for the personnel file in discovery, it's just not in the record, but that lawyer has not served his client very well. Well, correct, Your Honor. It is not in the record as to whether a note was made in the personnel file. The only thing that is in the record is Ms. Hamer's testimony that Ms. Anderson took handwritten notes during their conversation. She speculates as to what's in those notes. I would argue that this line of argument is precluded by the Nagel decision. In Nagel, which is cited in our brief, an EEOC charge was filed by a current employee, was delivered to the employer, the village of Calumet Park, where it sat presumably for all to see for several weeks. However, there was no evidence that the decision maker, in this case the village's police chief, actually saw the charge before making the adverse action against the plaintiff. This court affirmed summary judgment on the retaliation claim. In Ms. Hamer's case, the facts aren't even as favorable as they were to the plaintiff in Nagel. Here, Ms. Hamer is asking this court first to presume that Ms. Anderson even referenced the complaint of discrimination in her handwritten notes, and then secondly, left them in a place where presumably in the course of three days, Ms. Coffey or Ms. Glenn somehow happened upon them, understood what they meant, and deciphered that Ms. Hamer made a complaint of discrimination. With due respect, Ms. Hamer's argument is disingenuous. The reality here is there isn't a shred of evidence that Ms. Coffey or Ms. Glenn knew about the complaint of discrimination. As counsel points out, and as Ms. Hamer also contends, Ms. Anderson could have told Ms. Glenn in the February 28th phone call about the complaint of discrimination. Surely she could have, but she didn't. The facts in the record indicate that she didn't tell Ms. Glenn about the complaint. The only two facts in the record pertaining to this phone call is number one, that Ms. Anderson inquired as to why Ms. Hamer was not promoted into that position, and Ms. Glenn informed her it was due to her performance, her ongoing performance issues. And secondly, that Ms. Anderson specifically testified that she did not tell Ms. Glenn about the complaint of discrimination. The only admissible evidence here is that Ms. Hamer only informed Ms. Anderson of her complaint, and Ms. Anderson in turn did not inform Ms. Coffey or Ms. Glenn about Hamer's complaint. To the extent that Ms. Hamer seeks to contest these undisputed facts, it's not based on admissible evidence. It's sheer speculation. That can't overturn the district court's decision. In this case, Ms. Hamer had exceptional trial counsel and 17 months to conduct discovery. She took zero depositions, issued no requests to admit. In those depositions, she- That's awfully hard to describe as exceptional trial counsel, isn't it? Zero depositions, not getting the personnel file, no requests to admit, not bothering to read the rules of appellate procedure before filing an unlawful motion. She- That's not going to get you an A listing in Martindale-Hubbell. I concur, Your Honor. She did have query and harrow, which are recognized as fairly decent trial counsel. Instead, Ms. Hamer here is relying on nothing more than her own attorney's arguments, not admissible evidence or facts in the record to suggest that Ms. Coffey or Ms. Glenn knew about the complaint. So on this basis alone, the summary judgment decision should be affirmed. Even if they had knowledge, the record is clear that Ms. Coffey and Ms. Glenn had ongoing concerns about Ms. Hamer's performance at the help center. The undisputed facts establish that in February of 2012, in the time leading up to the removal from the help center, that Ms. Hamer had sent a February 7th email above her supervisor to the Fannie Mae decision makers, to Eric Ludwig, who was a regional director of Fannie Mae, complaining about her failure to promote into a position. But also, she was removed on the basis of feedback from Fannie Mae, specifically feedback from Mark Green, that she continued to have performance issues. She continued to be confrontational. She continued to have inappropriate communications with her coworkers during that period of time in February of 2012. If you review, if I may finish my sentence here, Your Honor. Thank you, Mr. Nowak. Thank you. Anything further, Mr. Herstoff? Just a couple of very quick points, Your Honors. On the separate appeal notice on the issue, I just take issue with the way that the defendants distinguished the Birch case from the Sixth Circuit and the Amatangelo case from the Third Circuit. Although it is true that those two cases did not involve challenges to the length of the extension granted, the challenge to the time extension in those two cases had to do with other foundational requirements of the claim processing rule, specifically whether excusable neglect or good cause had been established. The appellees there were seeking to challenge the way in which the claim processing rule was applied, and the Third and the Sixth Circuits, therefore, concluded that a separate appeal notice was required. As for the merits, they disagree with the defendant's contention that somehow an inference is required to be made from these notes in order to establish a genuine issue of material fact. We have much more than that. We know that Ms. Glenn was aware that Ms. Hamer was going to be meeting with Ms. Anderson on February 27th. We also know that on February 28th, Ms. Anderson spoke to Ms. Glenn inquiring about why Ms. Hamer was not promoted. This chain of events gives more than a reasonable inference that there was knowledge, and therefore, for these reasons and for all of the other reasons discussed here and in the briefs, we submit that the reasonable jury could find retaliation. For that reason, we respectfully request that this court reverse the summary judgment and remand for trial on the retaliation claims. Thank you, Your Honors. Thank you very much, Counsel. The case is taken under advisement.